RUFUS LEARNED, surv. part., *v.* ANNA M. HOLMES *et al.*

1. CHANCERY COURT—JURISDICTION.—For most misrepresentations and frauds, there is an adequate remedy at law, and the mere fact of fraud does not confer jurisdiction upon a court of equity. Fraud gives jurisdiction to a court of equity, only in cases where there is no adequate remedy at law.

2. SAME—CASE IN JUDGMENT.—B. & Co., of whom L. is a surviving partner, bought of H. the timber on certain lands, pointed out and described. H. & B. claimed that B. & Co. were cutting timber on their land outside the lines of H., and sued them in trespass. H. sued B. & Co. on a deferred payment for the timber. L. filed his bill to enjoin H. until the trespass suit could be determined. The bill charges fraud, misrepresentation and collusion. *Held:* That the remedy of L. is complete at law. It is true that equity jurisdiction, once acquired, will be retained for all the purposes of the bill, including, in a proper case, an adjustment of damages; but the jurisdiction for compensation or damages does not attach in equity except as an incident or auxiliary to some other relief. 40 Miss., 119.

Appeal from the chancery court of Jefferson county. Hon. J. M. ELLIS, chancellor.

On the 2d day of February, 1871, Rufus Learned, surviving partner of the firm of A. Brown & Co., filed his bill against Anna M. Holmes and her husband, William Holmes, and before answer, filed by leave of the court, a supplemental bill. The original bill alleges, that appellees were the pretended owners in fee, of certain lands containing a cypress brake of much valuable timber, that appellant purchased all the timber in said brake, with the right to enter and cut the same for the term of twenty years, appellees representing that the cypress brake was wholly on their land, and that appellant agreed to pay for the same, $10,000, one-third cash, and the residue in one and two years, with interest, and that the deed was made, which recites that the brake is on the land of appellees; and that the firm paid the cash payment of $3,333.33, and executed their two notes for the residue. That before the contract was concluded, the firm diligently inquired of Holmes and wife, and of Hunt & Buckner, all of whom, represented that the brake was on the land of Holmes. That the firm expended much time, abor and money erecting buildings for laborers and stock

on the bank of the river, and cut about three thousand cypress trees, and were waiting for high water when they might ship them, when, for the first time, they were informed by Holmes & Buckner that a part of the brake was on the land of Hunt & Buckner, who, soon thereafter brought suit against the appellant, in trespass, for $9,000.00, and that on the 4th of August, 1870, Holmes brought suit on first note of $3,333.33. That he is willing to pay according to contract, but not to pay both Holmes, and Hunt & Buckner. That, in fact, the brake and the trees cut, are not on the land of the said Hunt & Buckner, but on the land of Holmes; and charges misrepresentation, fraud, and collusion, on the part of both Holmes and wife, and Hunt & Buckner.

The bill, prays for an injunction restraining Holmes, until the controversy can be determined between appellant, and Hunt & Buckner, in the trespass suit.

The supplemental bill sets up the fact, upon information, that Holmes and wife deny their deed to Brown & Co., and have yielded the possession of the lands to Hunt & Buckner; that before the sale, William Holmes had given assurances that in case of any controversy, his testimony would be; touching boundaries, the reverse of what it now appears to be, and that since the service of the injunction, Holmes has disclaimed all right, to a portion of the brake, in favor of Hunt & Buckner, to make the suit of the latter the more certain against Brown & Co. for trespass. That this action of Holmes, has compelled appellant to compromise with Hunt & Buckner, and to pay them for all the trees cut on the disputed lands, allowing appellants to occupy the houses, etc. The supplemental bill now prays that Holmes be enjoined; that an account be taken; and that the amount ascertained to be due Hunt & Buckner, shall be deducted from the notes sued on by Holmes.

To the original and supplementary bills, a general demurrer was filed, which the court sustained. The complainant appealed from the decree of the court below, and assigns for error, the sustaining of the demurrer and dismissing the bill.

*T. J. & F. A. R. Wharton* and *Winchester & North*, for appellants :

The principles of this case, have been so well settled in the case of Parham v. Randolph, 4 How. Miss. R., 435, and in Davis v. Heard, 44 Miss., 50, that nothing is left for counsel for appellant in the submission, except an abstract of the facts stated in the bill, and confessed by the demurrer. This difference, however, between the case at bar and those cited, may be mentioned : that one has arisen upon a contract of sale, of what, in several aspects and relations, has been held to be personal property, coupled with a license to use for certain special purposes, not inconsistent with a possession and use for ordinary purposes by the vendor, of land ; while the cases cited, arose upon sales and conveyances, with covenants against eviction of an estate of freehold and inheritance in land. The fraud disclosed by the original and supplemental bill is two-fold ; first, the vendors either ignorantly, or falsely, represented themselves to be the owners of lands belonging to others by title ; second, while pursuing the appellant in a suit at law for the price, they have acted in collusion with and aided the parties holding by paramount title, for a recovery of more than the value of the same property. The misrepresentation has been of material and vital consequence. The injury to the appellant has been great—almost commensurate with the original consideration of the purchase. He had proceeded too far to be placed in *statu quo*, at the date of the contract, and for any benefit, as well as to escape great loss, he was compelled to a purchase. by new contract, of part of the property, and to submit to a loss of another part. Without this new contract with Hunt & Buckner, he would have been subject to the prosecution of their pending penal action ; the loss of all the property upon the land in controversy, which land the appellees admitted to be the property of Hunt & Buckner, and the possession whereof they finally yielded up, with disclaimer of the title, involving a loss of the buildings of appellant, to-

gether with his license for an occupation and use of the land necessary to a removal of the trees, about which there was no controversy.

If, upon the facts that had transpired before the contract with Hunt & Buckner, the appellant for relief had demanded a recission of the contract with appellees, by perpetual injunction of action upon the notes, and compensation in damages, for his losses, it seems there could have been no doubt of his right. 44 Miss. R., 50. But he had then paid one-third of his purchase, and expended large sums of money for the execution of his contract, and the appellees were without property, except that purchased, which was of little value without the entire purchase, including the property of Hunt & Buckner; and his only remedy, was such an equivalent of performance on the part of appellee, as might be obtained in an abatement of the purchase money, as would indemnify him for the consequences of an assertion and maintenance of their title by Hunt & Buckner. The facts charged in the original bill, show fraud in their sale by the appellees, an impending failure of consideration, resulting from the false representations, which, not being available as a defense to the action at law of the appellees, before the determination of the pending suit of Hunt & Buckner must, without the aid of equity, end with irreparable injury to the appellant. He is without any remedy for the failure of his title, except in a deduction from the price of his purchase of the amount of the damages sustained. For auxiliary relief, the bill prays an account, of a complicated character, that the damages sustained by the appellant may be ascertained.

Upon the case stated in the original bill, it has seemed there could be no question respecting the jurisdiction, not only for staying the action at law upon the note, but for taking the account, this having become a necessary incident to matters of strictly equitable cognizance. In Scott v. Billgerry, 40 Miss., 142, the "jurisdiction of chancery for compensation in damages," under special "circumstances," or "upon

peculiar equities," " in cases of fraud," or in cases where the party has disabled himself by matters *ex post facto* from a specific performance, " or in cases where there is no adequate remedy at law," is fully recognized.  The case of Davis v. Heard, 44 Miss., 50, was for recission of a contract of sale of land, upon the ground of fraud by the vendor, an injunction restraining collection of the unpaid purchase money, and compensation for damages sustained by the purchaser, to be measured by his payment.  The jurisdiction was not questioned.  In Woodstock v. Bennett, 1 Cowen, 711, it was held that where a party has put it out of his power to perform his contract specifically, the bill for performance ought to be retained, and an equivalent in damages awarded.  The same rule was approved and acted upon in Phillips v. Thompson, 1 J. C. R., 149, 151.  The rule collected from the English precedents of Hill v. Buckley, 17 Ves., 401; Milligan v. Cocke, 16 Ves., 1; Hasley v. Grant, 13 Ves., 77; Mortlock v. Buller, 10 Ves., 316, is thus stated in 1 Maddock chy., 341-2:  "If there be a difference in value between the real interest of the vendor, and the interest represented as proposed for sale (though innocently misrepresented), the purchaser is, it seems, entitled, if he chooses to abide by the purchase, to have such interest deducted from the purchase money, by way of *compensation;* nor can the vendor, it seems, refuse; and if the master, on a reference to him, is unable to ascertain the difference in value, but the purchaser is content to take such interest as is conveyed to him, with such indemnity as, under all the circumstances, the master shall think just and reasonable, a decree to that effect will, at the instance of the purchaser be made."  And even where the contract is of such a nature that an adequate remedy lies at law for compensation in damages, " as incidental to other relief," courts of equity will assume the jurisdiction.  2 Story Eq., §§ 794, 798; 2 Beavan Rep., 230.  And there is no exception to the jurisdiction, when necessary to prevent irreparable mischief, or to avoid a fraudulent advantage.  Story Eq., § 798.

From the supplemental bill, it appeared that facts existing at the date of the bill, but not until afterward discovered by the appellant, made the supposed failure of consideration a certain event, to transpire on the trial of the suit of Hunt & Buckner; and that the appellees had yielded up to them possession of the land which they claimed under their title ; and that upon said discovery, the appellant by an agreement for satisfaction for the damages of which they complained, acquired from them all that he could of what was wanting for performance of the contract of appellees. The amount of the damages was not yet ascertained; and the necessity for the account demanded in the original bill would have remained, if it had been ascertained. It should not be apprehended that the argument before the court below, that the certainty of the partial failure of consideration, and the agreement upon a mode for ascertaining the damages sustained by Hunt & Buckner, disclosed in the supplemental bill, divested this court of its jurisdiction. The proposition, that after a court of equity has obtained jurisdiction for subjecting an action at law to equitable defenses, it will cease to act, when, by subsequent events, such defenses become more available than they were before the commencement of the suit in equity, is novel. It is an established principle that where a court of equity once had jurisdiction, it will insist on retaining it, though the original ground of jurisdiction, the inability of the party to recover at law, no longer exist. " It does not follow that because a court of law will give relief, this court loses the concurrent jurisdiction it has always had." 17 I. R., 388; 23 Miss., 90.

" There may be cases cognizable at law, and also in equity, of which cognizance cannot be effectually taken at law, and therefore equity does sometimes interfere; as in cases of complicated covenants, when the party has not made defense, because it was impossible for him to do it effectually at law. Ib., 389. Citing Ld. Redsdale, in Rathbone v. Warren, 10 J. R., the court said : " I do not say that there was no defense at law, but the remedy was doubtful. Besides, the

respondent had a right to call the appellants into a court of equity, to account for the money received by them of the principal; and it is a settled rule, that when the court of chancery has gained jurisdiction of a cause for one purpose, it may retain it generally."

*George L. Potter*, for appellees :

It is plain that the mere claim of Hunt & Buckner, nor a mere suit brought by them as upon such a claim, can entitle Learned to the injunction he seeks. There must be substance in such claim, and the bill should show a probability, at least, that it is well founded. A debtor cannot resist payment upon the mere fact, that a stranger asserts, or sues upon an adverse claim, to the property, for which the debt was created. As the bill shows, complainant, before the contract was signed, and conveyance made for the timber, inquired of Hunt & Buckner, who represented the Keeney survey as the true line, and complainant acted on that rep-resentation, and so Hunt & Buckner are estopped to deny as to complainant the Keeney line. Now complainant shows, that he can most certainly maintain against Hunt & Buckner, and all claimants, his full right to all the timber, etc., which he claims was purchased by Brown & Co., from Holmes. The claim raised by Hunt & Buckner depends on a question of boundary. Complainant claims that under their contract, Brown & Co. were entitled to all the cypress up to " a line by a survey of Thomas Keeney, made under the direction of Thomas F. Baker and Jane Ferguson, at the time of the purchase of the latter from the former." This survey line was located by Keeney, in 1853. The new claimants, Hunt & Buckner, acquired their adjoining lands by devise, from said Jane Ferguson, who, on the 25th of January, 1854, acquired the same by purchase, from Thomas F. Baker. Hunt & Buckner therefore derived title from Baker. The cypress brake, or swamp tract, the line of which is now said to be in controversy, " had been the property of Abner E. Green, Thomas F. Baker, and others, by

successive conveyances." It was bounded on the southwest by the land of Hunt & Buckner. This is the land acquired by them under the will of Jane Ferguson, who, in January, 1854, purchased the same from Thomas F. Baker. As Baker once owned the cypress brake, Holmes, of course, derived title from him, and thus we have the fact that Baker was former owner of both tracts. It was not until after Brown & Co. had entered on the land, under their contract, and had cut many trees, that Hunt & Buckner, were " for the first time " informed that the Keeney line was not the true boundary, and then, after a lapse of some seventeen years, they set up their present claim. In another place complainant says that Hunt & Buckner " recently assumed and claimed " a new boundary line. Well may complainant " hope " to defeat the claim of Hunt & Buckner, since, by the agreement of the adjacent owners, he can show the boundary located by the said Keeney, and a possession by them, respectively, in conformity thereto. The new claim of Hunt & Buckner is wholly unfounded. In such a case, what pretense in equity to stay payment can be found. With such facts in his favor, even Hunt & Buckner can see how he can prevail. Notwithstanding these facts, it seems that Holmes abetted the unfounded claim of Hunt & Buckner, and this is set up as the main equity of the bill, as if the conduct of the husband could defeat the just rights of the wife to recover her separate property. It is also insisted that Mrs. Holmes " disclaims " the old boundary. But courts know of no verbal disclaimer of *femmes covert*, and especially not, in a matter of title to land. The alleged declarations of defendant cannot effect the legal rights of complainant.

The contract as stated in the bill, is to " allow the said A. Brown & Co., to cut and remove for their own proper use, all the cypress standing in the brake, which cypress brake is upon the lands of Anna M. Holmes, situate and lying in the county," etc., and which is not further described, except as being " to the south " of a certain public road. The fair construc-

tion of these words, is to regard them as referring merely to such timber, as was in the brake on her land, and not as a guarantee that the whole of any cypress brake, was on that land.

Moreover, this agreement is only an authority to cut and remove for their own use, the timber, and does not extend to the erection of cabins on the place. Appellant dared not make the necessary charge of insolvency, but makes an evasive averment, which is wholly insufficient. He is sued as a trespasser, in cutting some five hundred trees, but he shows that they induced Brown & Co. to enter and cut on the land in controversy. Hunt & Buckner assured Brown & Co. beforehand, that the Keeney line was the true boundary. Hunt & Buckner could recover, only for the actual value, of the trees cut on the strip of land in dispute, and could not retain the buildings. It is not charged that the defendants are insolvent, but that they "will not have any property," though it is admitted that Mrs. Holmes owns the valuable tract of cypress land. It will not do to say that "without said timber" the defendants are entirely insolvent.

*Wm. F. Mellon,* on the same side, filed a very elaborate brief.

Tarbell, J., delivered the opinion of the court:

The firm of A. Brown & Co., of which Learned is surviving partner, purchased of Mrs. Anna Holmes, the cypress timber on a certain tract of land known as the "cypress brake," a description of which is fully set out in the pleadings. For this purchase the sum of $10,000.00 was agreed to be paid, one-third in cash, and the balance in two equal notes. Brown & Co. took possession of this swamp or brake, under their contract, and commenced cutting timber; soon after they were prosecuted by Hunt & Buckner, who claimed that Brown & Co. had cut timber upon their land, outside the lines of Mrs. Holmes. In the meantime, one of the notes had fallen due, and being unpaid, suit was instituted thereon, by Mrs. Holmes

against Brown & Co.  Thereupon, the bill in the case at bar was filed to enjoin the suit on the note until the determination of the trespass suit of Hunt & Buckner, and then to adjust in chancery, the respective claims of Mrs. Holmes on the note, and of Brown & Co. to damages.  Fraud is fully and minutely set out in the bill.  It is averred, that the lands of Mrs. Holmes were pointed out by metes and bounds, and were represented to include the lands afterwards claimed by Hunt & Buckner.  Collusion between Mr. and Mrs. Holmes and Hunt & Buckner, is charged.  Damages to a large amount are alleged by Brown & Co.

Upon the filing of the bill, writs of subpœna and injunction were issued, but before the appearance of the defendants, Brown & Co. filed a supplemental bill, by which it appears, that in consequence of the collusion between Hunt & Buckner and Mr. and Mrs. Holmes, Brown & Co, were forced to compromise with Hunt & Buckner.

Mr. and Mrs. Holmes appeared and demurred to the bill and supplemental bill, stating for cause, that the original and supplemental bills are insufficient and contradictory; and that the complainant has an adequate remedy at law.

The demurrer was sustained, the injunction dissolved, and the bills dismissed.  From this action of the court below, an appeal was prosecuted, the only error assigned here, being the decree containing the demurrer, dissolving the injunction, and dismissing the bills.

Both the original and supplemental bills have been carefully examined.  They are full and minute in their statement of the misrepresentations of the defendant.  If made, as charged, these misrepresentations were material.  Collusion between Hunt & Buckner, and Mr. and Mrs. Holmes to oppress and defraud Brown & Co. is explicit.  The cash payment stipulated by the contract between Brown & Co. and Mrs. Holmes, had been made.  Brown & Co. had entered under their contract and had expended certain sums in the erection of shelter, and other accomodations for hands and

stock. That portion of the swamp claimed by Hunt & Buckner, was particularly valuable to Brown & Co., as affording the best sites for roads and other accommodations. The parties could not be placed in *statu quo* by any action of Brown & Co.

Nevertheless, no fact is alleged, no question is presented, nor is there any proposition involved, as far as discovered, not cognizable by the law courts. Indeed, so far as can be seen, this whole case, and all the questions it can give rise to, may be as fully, fairly, and completely adjudicated in a court of law, as in equity. This being the case, the action of the chancellor is approved.

It might be added that this is not a proceeding to obtain a recission of the contract for the purchase of the timber, but to adjust the damages arising out of alleged misrepresentations of boundary lines. The inadequacy, even in the slightest respect, of a court of law, to deal with this case, in all its phases, is not shown. While it is quite true that equity jurisdiction, once acquired, will be retained for all the purposes of the bill, including, in a proper case, an adjustment of damages, yet it must be borne in mind that the jurisdiction for compensation or damages does not attach in equity, except as an incident or auxiliary to some other relief. 40 Miss., 119; 2 Story Eq. Jur. §§ 794 to 799; Willard's Eq. Jur., 309; nor where there is an adequate remedy at law, does fraud confer it. In most misrepresentations and frauds, there is an adequate remedy in damages at law. In such cases, equity will not interfere, and of this class, is the case at bar. These familiar rules will be complete by repeating their converse, that fraud will give this jurisdiction in cases where there is no adequate remedy at law. 40 Miss., 119; 41 ib., 370; 44 ib., 57; 4 How., 435; 1 S. & M., 443; Story on Con., § 977; Story Eq. Pl., §§ 472, 473, etc. Upon the facts as now presented, the complainant must be content to litigate in the law courts.

Decree affirmed.